Mr. Gorsheib, is that you? Yes. I understand you're here on behalf of Mr. Faber. That is correct. And that's on behalf of the appellant. And Mr. Minetti, you're here on behalf of the appellee? Yes, sir. Apparently Mr. Faber has indicated he can't be here because of  a family emergency. Mr. Gorsheib has asked to be able to argue this case on his behalf. Do you have any objection? No. Okay. Alright, Mr. Gorsheib, you may start. May I please support? Go ahead, sir. It's a pleasure to be with you this afternoon, and I appreciate your allowing me to appear in light of Mr. Faber's family medical emergency. It appears to me the central question is the basis of the trial court's dismissal. PNC suggested to the trial court that the mortgage, Ms. Stepney's mortgage was reinstated, and that it would be appropriate to proceed with dismissal under Section 1602 of the Mortgage Foreclosure Procedure. And that was an error. Ms. Stepney's mortgage was, they entered a repayment agreement, but there was never a reinstatement. So, alternatively, the section that seems to have been applied, and the section that was most heavily discussed in the briefs, is the voluntary dismissal section of 1009. Voluntary dismissal requires payment of costs and it requires proper notice. And our argument is simply that in this case, there was not proper notice. Notice was defective. When reading our local rules, Local Rule 2.1, as of the 6th Judicial Circuit, requires 14 days of notice prior to the hearing. And when read with Illinois Supreme Court Rule 12c that says notice is effective four days following mailing, then PNC was three days shy of having effective notice. They mailed notice on November 7th, so it would be effective per the rules on November 11th. Motion was heard on the 21st, and that was 11 days. I'd just like to note that Mr. Faber had filed a motion to vacate the judgment that was set for two weeks after the November 21st date. And his intention was to vacate the judgment and file counterclaims, including claims for fraud. Mr. Faber was brought in after the case had already reached default judgment. So that would have been his only opportunity to present these counterclaims. And on the date where the dismissal was heard, Mr. Faber was out of the country. He had no actual knowledge of that hearing date until he had already left. So we believe that the rules simply were not followed as required for voluntary dismissal, and that to the extent the court believed it was dismissing this per the mortgage proclosure procedures regarding reinstatement, that was an error because there was no actual reinstatement here. In light of those issues, we are asking you to vacate the order of dismissal and remand the case with instructions that the trial court consider Ms. Stepney's pending motions or Ms. Stepney's motions for leave to file a counterclaim in third-party complaints against him. If we don't give you that relief request, then what happens in this case? Are the counterclaims still viable, or does that foreclose any opportunity to bring in some other fashion? I believe that the claims could still be brought, but our position is that PNC chose this form. This form has the full knowledge of the procedural history, and one of the allegations pertaining to the fraud was that she was basically led to believe that no action was required on her part, which led to the default. So in a way, we're not allowing this, but the PNC benefits from that. The defendant benefits in terms of possibly forum shopping or forum allocation by preventing the person who brought the lawsuit from dismissing it. You would agree that's a rather unusual posture for a case to be on appeal. Certainly. It is unusual. Our position is simply that there was no shopping on our part prior to this. I think you know what I mean. It's not forum shopping. It's possibly to prevent the plaintiff from, once the plaintiff becomes a defendant, from removing the case to federal court. It can't be the opposite of forum shopping, but choice of forum plays a part in your objections to the dismissal. Yes, sir, that's correct. I suppose I would just submit that because the nature of the fraud alleged led to the default judgment against me, which placed her in a position where she couldn't bring her counterclaims because there was already a judgment, which led Mr. Faber to file a motion to vacate that judgment, which was set for two weeks after they brought this motion to dismiss the defendant. And do you assert that PNC is doing that for the purpose of forcing you to file new litigation against them? I'm not sure what their... And I don't mean you. I mean Mr. Faber and his client. Certainly. I don't know what their motivation was, though. In my review of the transcript, I believe they had noticed that he intended to file more offensive motions prior to their decision to file this. The dismissal, one, it didn't state... The motion dismissed didn't state the basis of the publication of the dismissal. And it was set without contacting our office. When we called them to say he's out of the country, there was no kind of courtesy extended. And I believe that in the previous hearing, Mr. Faber mentioned to the court that he intended to file some motions that could change the... I can't recall his exact language, change the trajectory, change the nature of the litigation. So I believe they had noticed that he intended to file some form of capital enemy, and that likely led to the decision to dismiss before he had the opportunity for his motion to vacate. In the December setting, immediately after filing the motion to vacate, he intended to file his motion to leave the scene. And this basically short-circuited that opportunity. But as he did not follow the rules, we think he should still have an opportunity to have his motion to vacate heard and that the motion to leave should be submitted to our office. Thank you, counsel. Mr. Minetti. May it please the court. My name is Lou Minetti. I represent the plaintiff at the Lee TNC Bank National Association. Your Honor, the issue in this case is whether a plaintiff's dismissal that was prompted by an agreed-to and successful repayment plan was a voluntary non-suit under Section 2109 of the Code. The Circuit Court correctly held that it was not. This case began because Ms. Stebney fell behind on her mortgage payments. During the case, a mutually agreed repayment plan was entered into that would allow Ms. Stebney to make payments, keeping her mortgage current going forward, and also paying an amount that would pay towards the arrearage existing. And that plan was successful. The case ended because there was no longer any actionable default that was alleged in the plaintiff's complaint. There was nothing more I could seek from the court as far as retorts. In that respect, it didn't reflect an active choice by my client to either sustain the case or end it. It had to end at that point. And there was no controversy that could be later revived or refiled at a future date. The defendant conceded that the hearing alone had, in fact, been brought current and that only argued that the case should survive so she could bring counterclaims in the context of the plaintiff's complaint or plaintiff's case. To make the case survive, she argued that the technical requirements of Section 2109 of the Code weren't compliant. But the dismissal was not in the nature of a non-suit, and there was nothing improper about the dismissal. The dismissal, when it was entered, was simply not a non-suit under Section 2109 of the Code. None of the characteristics of non-suits or the factors that occur when non-suits are entered were present here. First and foremost being the sense of volition or choice by the plaintiff. In this case, the default was cured. The complaint alleged a breach of the mortgage contract, and that breach was cured. There was nothing left for the plaintiff to pursue in the case. Conversely, with a non-suit, there's this concept that the case could survive, that there is an actionable controversy that could keep going, but the plaintiff wants the case to end when they want it to end, which clearly didn't happen here. The complaint alleged a breach of the October 2011 payment. But by mutual agreement of parties, the loan was actually brought current by Ms. Steppen. And once that happened, once she was brought current, and there was no longer any breach of the October 2011 payment, the plaintiff had no choice, had no discretion, but to dismiss its case. In fact, the only proper action at that point would be dismissal. There was simply no other motive went into it. And certainly, it would have been improper to sustain the case, even though Mr. Faber had brought motions in which he wanted certain relief from the court. It would be improper at that point, with a curing of the breach alleged in the four corners of the complaint, to sustain the case. A related element that, again, occurs when non-suits are entered, but didn't happen here, is this notion of a controversy between the parties. The jurisdiction of the circuit courts extend to all justiciable controversies. And if there's no controversy between the parties, there's simply nothing for the court to do. Again, once Ms. Steppen became current, when there was no longer any breach, and she was current on her mortgage payments, there was nothing more for the circuit courts to decide. And in these two important aspects, the case was resolved. From the plaintiff's perspective, there was nothing more for it to seek from the circuit court. There was nothing it could ask for as far as redress in the four corners of its complaint. And from the court's perspective, there was nothing more to decide as far as the controversy between the parties. Additionally, the dismissal didn't comport with the purpose or the effect of non-suits as articulated in the code. Non-suits have been described as important procedural mechanisms, and they're most commonly used to cure technical pleading defects by a plaintiff, a forgotten jury demand, that sort of thing. And in fact, the abuse of non-suits, described by the Illinois Supreme Court in a case where they further restricted the plaintiff's use of those types of motions, was that non-suits could potentially be used to avoid adverse rulings. But there's no concern of that here. There's certainly no defect in the complaint that was ever articulated by the defendant. And in fact, a favor of dispositive ruling was entered in the plaintiff's favor. In May of 2012, judgment for foreclosure and sale was entered in the plaintiff's favor, which was a year and a half before the plaintiff ever saw the dismissal of his case. So there wasn't this notion of potential abuse. And in fact, as stated in the Porzing case, cited by the plaintiff in its response brief, for all intents and purposes, the plaintiff had won its case when it sought to dismiss its action. Finally, regarding the factors that non-suits have that this case did not, the dismissal didn't implicate the corresponding refiling section, Section 13217 of the Code. The Code is clear that when an actual non-suit, when those types of dismissals are entered, it triggers Section 13217 of the Code that says a plaintiff can refile within one year, or within the limitations period, whichever is longer. But again, that was simply inapplicable here because there was nothing to resurrect, there was nothing to refile and pursue again, regarding the articulated breach in the complaint, which in fact was the point of the Schechner case cited by the plaintiff. And its response brief was that the plaintiff, trying to bring the subsequent suit, tried to invoke Section 13217 of the Code. The court very rightly said that no, the prior dismissal was pursuant to settlement. It wasn't pursuant to Section 210 of the Code, so it didn't cause Section 13217 to come into effect. So what, why didn't, you weren't the trial lawyer, were you? No, Your Honor. The trial lawyer did not include a section under which she sought dismissal, did she? Correct, Your Honor. The motion itself simply stated that the plaintiff wanted to dismiss its action, and asked for it to be dismissed. What's your contention that that motion to dismiss was made under? It was made, Your Honor, it'd be my most vehement contention that it certainly wasn't pursuant to a non-suit, because the context of the dismissal was important here. There was argument made at the defendant's motion to vacate that dismissal, that a reinstatement could have occurred. And again, the dismissal, the context is important, the dismissal certainly was pursuant to settlement. The settlement, the repayment plan was agreed to and actually completed, causing the settlement to bring her mortgage current. So, to the extent, I don't think it'd be incorrect to characterize the repayment as a reinstatement. Did it qualify under the requirements of the statute as a reinstatement? Not the strict requirements that it has to be brought within 90 days. And the code, the section is written as if it will be one lump sum payment. So clearly it took place outside of 90 days of service. But there is, and I'd note for Your Honors, that there is a case law of fleet mortgage versus deal. It's 287-113-285. It's the first district case from 1997. They do clearly state that reinstatement is a special right that mortgagees have the power to accept payments on. Even if it doesn't strictly comply, they can waive certain aspects of reinstatement, such as the 90 days. So if the only barrier to this actually being a reinstatement under 1602 was the timing that it wasn't a single lump sum payment made within 90 days of service, the fleet mortgage case could stand for the proposition that the plaintiff rightly accepted those payments and it wouldn't be wrong to call it a reinstatement. But again, I don't think you need to go that far to reject the defendant's argument, which is it was a non-suit under 1009 and in both of those technical requirements. Because it was certainly pursuant to a completed, successful settlement, the repayment. So nothing about the character of the dismissal indicated it was a non-suit. And the trial court correctly held it was something other than a non-suit under Section 2109 of the Code. And all the parties agreed that the defendant actually became a current under loan and the plaintiff's action should be dismissed. Again, it further undermines the characterization that this was some sort of unilateral election on the plaintiff's part to end the case and to jump out when it wanted to end it. The defendant admits in her opening brief that the loan was brought to her current. I don't think there's any dispute about that. The loan, she was current under loan payments due to the successful repayment agreement. And actually at the hearing on the motion to vacate plaintiff's dismissal, the defendant conceded that he wanted to bring the counterclaims but just before the case is dismissed. Didn't ultimately oppose the dismissal of plaintiff's case. And in fact, later in that same hearing, when pressed by the court that, well, how could you force a plaintiff to sustain this cause of action, the defendant conceded that dismissal would be proper, but that she just wanted the ability to file these counterclaims in plaintiff's case first. But there were no counterclaims pending at the time the court dismissed the case, were there? No, Your Honor. Let me ask you a question. You appear to be just as concerned with why the case is dismissed as it being dismissed. And I, frankly, am missing the point in the real world. Your effort was to end the litigation because you thought that it was proper, either because of reinstatement or plaintiff is in control of the litigation, there's no reason to go forward, so it's dismissed under whatever label of the statute. The defendant says, wait a minute. We don't really want it dismissed because we'd like to bring counterclaims. And inferentially, we're worried that if we file a separate lawsuit against you, something may happen in terms of choice of forum that we think is disadvantageous. Has everything I said so far been accurate? Yes, Your Honor. What's going on here in terms of the future? I can't grasp it. I'd say, Your Honor, in terms of real world consequences, whether or not this case survives, whether or not Your Honor sends it back to the trial court for further proceedings, that's the ultimate proxy. And the defendant's avenue to send this back to the circuit court for further proceedings in my client's case is to assign error to the method of dismissal. Right, and I understand that part. So is the bottom line the forum? No, Your Honor. I can't really speak to that issue, Your Honor, because my client's future decision and any potential or hypothetical future claims brought against it, I couldn't speak to. But I guess the real world limitation here, the bottom line is that the defendant only allows my client's action to survive if he can assign some error to dismissal. It's our contention that there was no error because it simply wasn't a non-suit. And once you take that away, then there's simply no avenue to attack the dismissal on technical grounds or not paying costs or notice. It would appear at this point that the defendant wants it to stay alive to file those counterclaims, acknowledges that the claims could still be ripe or ready for adjudication if a separate lawsuit was filed, but it would be more convenient for whatever reason to do it within the context of this case. Well, and certainly the only reason articulated in defendant's briefs, Your Honor, was again a type of, again, not forum shopping, but narrowing of choice. And again, as stated by the probable case that we cited in our brief, the notion of keeping a case alive simply for the purpose of thwarting a potential forum choice can't be a condoned practice. And again, the defendant's already conceded that there's no bar or barrier to simply filing for a lawsuit. It's just done, and again, the only reason articulated in the defendant's briefs was this limiting of the forum to potentially insulate the claim to remove the federal court. The only other issue raised by the defendant is that the notice of plaintiff's dismissal was improper. Plaintiff's notice of the dismissal of its action complied with all applicable rules, including the local rule that says that hearing must be, or notice of motion must be made not less than 14 days before the hearing date. Here, plaintiff sent its notice of motion for the dismissal 14 days before the hearing date. The local rules, like all rules, need to be interpreted by their plain language. And here, the local rule says it must be made 14 days in advance, not less than. The defendant doesn't cite any authority for the proposition that the word made is used in the local rule means mail and the effective date articulated in Illinois Supreme Court Rule 12C passed. He has no authority for this, and it would lead to the confusing result that the plain language of the local rule couldn't be relied on. An additional calculation would always have to be done to ensure compliance with the local rule. Even though the local rule says on its face mailing should be made 14 days. An additional flaw in the notice argument made by defendant is that the case law is clear that to resist dismissal based on notice defects, certain prejudice has to be shown. You have to show prejudice. And no prejudice was shown here. Defendant was certainly aware of the motion in advance of the hearing. They mailed the notice out 14 days in advance. Counsel was able to appear and oppose that motion. In fact, it was the same counsel that's present here arguing the appeal. And he attended the hearing and orally opposed the dismissal because he intimated that the defendant wanted to do certain more things in this case. So he certainly was able to air that issue on the date of the hearing. Additionally, and this goes toward the Metcalf case cited by Plain Defendant's brief, is that no prejudice can be shown because even faced with that dismissal, defendant filed a follow-up motion to vacate that dismissal and again was able to bring up the notice issue, had a hearing on that issue, and again lost. So to the extent that defendant is articulating the notice defect, certainly no prejudice was shown. Ultimately, the record undermines what the defendant is trying to do here. Defendant's ultimate goal and the aim of this appeal for defendants is to be able to bring these claims in the context of a counterclaim and again to immunize them from potential removal to federal court. But the issue of having leave to file claims in this case as counterclaims and whether or not plaintiffs' complaints should be dismissed are two separate issues. They're not interrelated and one doesn't rely on the other. And it's a logical misstep to assume that the dismissal in and of itself barred the defendant from bringing these counterclaims. And defendants' own actions undermine the notion that they're interrelated. The record shows the defendant was aware of the lawsuit for three months before trying to bring the claims in this case. She appeared in court when the sale was rescinded and said that she wanted to bring some motions and change the momentum of the case. Again, it shows up when plaintiff dismisses its action and intimates that they're not ready for it to be dismissed because they want to do other things in this case. It's not until the defendant is faced with the act of dismissal that she brings these motions to bring the claims in plaintiff's action. Not only does this potentially run afoul of Illinois Supreme Court Rule 274, which says that there's only one post-judgment motion, the actual motion for leave to file these claims was the third post-judgment motion brought by the defendant. The case was dismissed. Then the defendant brought the motion to vacate that dismissal. Then the defendant filed a motion for cause. And finally, almost a month after the dismissal, the defendant actually brought the motion to leave to file these claims in plaintiff's case. This was compounded by the fact that the Supreme Court's order doesn't speak to that motion. It merely denies plaintiff's motion. It merely denies defendant's prior motion to vacate that dismissal. And the defendant didn't pursue a ruling on the motion to bring these claims before seeking this appeal. So what the record shows is a pattern of defendant procedurally not doing what was necessary to bring these claims as counterclaims to this action, which, again, is her ultimate goal. And it further undermines the merits of this appeal, which is from the dismissal of plaintiff's action. And as the defendant is conceded in court today, there's nothing barring the defendant from going and filing her own circuit suit, or at least nothing that occurred to counsel today. As an alternative argument, I'd offer this, that the circuit court certainly believed that what happened functionally at the dismissal of the case wasn't a non-suit. And so it was never an issue as to whether or not the cost of the appeal would be paid. If the court is inclined to deem that dismissal functionally a non-suit, I'd submit the appropriate remedy would simply be to use your inherent authority to enter an order that should have been entered and allow payment of costs. Not to reverse the command, not to have this case survive when, again, all the parties agreed that the case should be dismissed. Ms. Stepney became concurrent. There was simply nothing more to do in the procedure. But that affirming the dismissal of plaintiff's action, but if costs are allowed for it, again, everyone agrees the case should be dismissed. For the foregoing reasons, I ask that the dismissal of plaintiff's action should stay. Thank you. Thank you, counsel. Mr. Worsheim, any rebuttal? Yes, I'll be brief. I just want to respond with a few specific points. First, I think it's still unclear what the trial judge thought the basis of the dismissal was. At the November hearing where I appeared to Mr. Tabor, I appeared to just simply seek a contingency because he was out of the country. But PNC's counsel at that hearing said, Your Honor, it's plain that we can voluntarily dismiss our case at any time. And I would submit that at the time the court initially granted dismissal, it was doing so under the auspices of a motion to voluntarily dismiss based on the representation of PNC's counsel. At the subsequent hearing where Mr. Tabor appeared, counsel for PNC stated that they stated to the trial court that this was a reinstatement case, which was factually incorrect. And it appears from the record of that proceeding that the trial court proceeded with the reinstatement dismissal provisions because it took the direction from PNC's counsel that it was indeed a reinstatement. And to the extent that the trial court did so, that was an error as it was not a reinstatement. It does not meet the formal reinstatement requirements specifically in my application. So one of the two seems to be the case. And we would submit that it could not have been dismissed per the reinstatement provision as it was not a reinstatement. And if Judge McCarthy's original dismissal was indeed based on the voluntary dismissal rules, then PNC had an obligation to follow the rules and serve proper members, which they did not. With respect to the argument that this was a dismissal pursuant to a settlement, the cases cited by PNC included a settlement agreement where the dismissal itself was a component of the agreement. Here, Stepney never agreed to have her case dismissed without any kind of an opportunity to bring her counterclaims. It wasn't part of the modification or any agreement between Stepney and PNC. And with respect to the arguments made about Mr. Faber's failing to bring the counterclaims prior to the November dismissal date, our understanding was simply that he had to file a motion to vacate the judgment prior to filing his counterclaims. And a motion was set for two weeks after this dismissal occurred for the court to consider his request to vacate the judgment so that he might then file his counterclaims. And I wanted to simply walk the court through that progression to explain. And that's all I have. All right. Thank you, counsel. We'll take this matter under advisement for being recessed.